Council for the appellant, whenever you're ready. May it please the court, I'm Rick Obelman with the firm of Carlton Fields, Jordan Burt, with me is Dorothy Kafka, I represent the Hannah appellants here, and the issue presented by this appeal is whether a solitary text sent by a lawyer to his former client promoting future services with a discount constitutes a concrete, injuring fact sufficient to have standing under the TCPA. Our argument is that is not. I'd like to begin by quoting the current chairman of the FCC, Ajit Pai, who's observed the TCPA has become the poster child for lawsuit abuse with the number of TCPA cases filed each year skyrocketing from 14 in 2008 to 1,908 in the first nine months of 2014. And that in practice, the TCPA has strayed far from its original purpose. In fact, in the latest year available, 2017, the number of newly filed TCPA cases hit 4,400. And there were 3 trillion texts sent by Americans in 2017. Now, the issue here is whether or not a concrete injury is presented. And under Spokio II, the Supreme Court has made it clear that a statutory injury or statutory claim does not necessarily produce a concrete injury. And we're saying here that there is no concrete injury. This is an abstract, theoretical, de minimis kind of a injury. Well, it's de minimis because there was one text, right? It was one text. One text. And it's distinguishable from the case involving faxes, because you don't even have to read your, it doesn't type your phone. That's right. There's a distinction there. But what if it were 12 text messages rather than just one? Well, I think, of course, every case involves line drawing. You know where I'm going. But yeah, of course. But what's really at issue here is whether or not a solitary text, no matter where you draw the line, I'd say one text is too few. But where you draw the line is, when does it become an intrusion? And an intrusion has to be conduct that's highly offensive to the reasonable person. That's what the law of intrusion is. It's not some inconsequential piece of good news that you could get a discount on your next ticket. Intrusion. Excuse me, would you agree that what Mr. Salcedo has alleged here is a substantive violation of the TCPA as opposed to a procedural violation like the ones at issue in Spokio and our Nick Law case? I think, first of all, it needs to be understood. Did you have to have a concrete injury in fact, whether it's procedural or not? I also think it's a hard distinction to draw in the context of, well, is this a case where it's procedural because there wasn't consent? Or is this a case where it was substantive because there's a right not to get the email? Well, that is the very thing that the TCPA regulates. What the TCPA? That sounds to me like substantive. Well, what the TCPA, let's back up a little bit because I'm going to answer your question. The TCPA does not address texts at all. Now, there's an opinion in which you were on the panel which points out that the FCC decided it did and unless you do a Hobbs Act appeal or if you look at it from a Chevron point of view, you're stuck with that. But that's not the test we're talking about here. What we're talking about here is where Congress elevates conduct that wasn't enough for a suit before. That counts as to what Congress meant. Congress didn't do that here. The FCC did this here. The underlying purpose of the standing requirement is separation of powers. So you have Congress not having ever addressed texts. Let's assume that texts would qualify. Set aside that question. I'm sorry? Set aside the question of whether a text qualifies. That's what you're talking about the FCC dictated, right? The FCC decided to construe the act that way. But what I'm saying is the test for deciding whether Congress has elevated a harm is whether Congress did it. And Congress... Well, if we were talking about a tax, Congress clearly elevated that, right? No. That's what I'm saying. I mean, if we're talking about a fax, I'm sorry. Yes, yes, that's correct. Yes. But the... So if a text qualifies, it's a substantive violation, isn't that right? Possibly. I still think that that's not entirely clear, but let's assume it did. Let's assume it did. There still would have to be a concrete injury. And you don't get away, you don't get out of having a concrete injury of fact by calling it procedural or calling it substantive. And your argument for why this isn't a concrete injury is what? It didn't tie up his phone like a fax does? It's because several fold. One, that it doesn't disable the cell phone. It doesn't shift the cost of advertising to the recipient. It also is not an invasion of privacy. That's the other argument here. Because it isn't highly offensive conduct. It's not intrusion the way intrusion is understood or could ever be understood. This is a simple text from a lawyer to his former client. And is that in any way relevant that there is a prior relationship here? Well, it could be. This was a facial challenge. Where there is a prior relationship, the act doesn't apply. Now, of course, it is clear that there was a prior relationship. That is clear from the complaint. But to me, the critical point is that this is an abstract injury. This is not, this does not cause an invasion of privacy. It is not highly offensive conduct to the reasonable person. So just so we're clear on what the complaint says. Yes. Given that it's a facial challenge, we're looking at the allegations of the complaint. That's correct. The plaintiff alleged that the text message caused him to waste his time by responding. And during that time, neither he nor his cell phone were available for other use. Is that right? Yeah, well, his cell phone is available because you can get and receive text messages when you're looking at a text. It doesn't disable you. What he's complaining about is a waste of time, he says. And I would argue that that's just the abstract violation of the statute. It doesn't rise to being an invasion of privacy unless the reasonable person would find that highly offensive. And the Parakase gives examples of it. It's like steaming open someone's mail. It's like trespassing in their house and looking at them. It's doing egregious things that are intrusive. It's not a single solitary text. And as I cautioned at the beginning, there is a flood, there's already a flood of these cases with 40 trillion texts. Do you really want to create a cause of action where somebody sends one and it's relating to a prior relationship between a lawyer and his client? I just think that would be a big mistake. Is there any case that says that tying up a fax line is the only type of injury that would confer standing under the TCPA? Well, I mean, Nick Lau and Endocrine both say that it's tying up the fax machine. Because while the fax is running, you can't get faxes. And also, it's shifting the cost. Excuse me. That's what was found to be the injury in those cases. Yes. But what's the authority for the idea that that's the only type of injury that would confer standing? In other words, that his cell phone would have to be tied up for some period of time. I don't think they say that, do they? Well, there are cases that are contrary to Nick Lau and to Endocrine. But even those, like the Ninth Circuit, for example. I would direct the court's attention to the remand opinion in Spokio, and it says, nevertheless, Robbins is not correct. That any FACRA violation premised on some inaccurate disclosure of information is sufficient. The Supreme Court in Spokio explicitly rejected the notion that every minor inaccuracy reported in violation of FACRA will cause harm or present any material risk of real harm. The court gave the example of an incorrectly reported zip code. Without more, could not produce concrete harm. Then the court went on to say, the Spokio requires some examination of the nature of the specific alleged inaccuracies to ensure that they raise a real risk of harm to concrete interests. And then I think the key line, put slightly differently, the court suggested that even if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does. And that's what my argument is today. Getting a single email from your former lawyer telling you if you get a problem with a ticket again, you'll get a discount, is a trivial and it should not be sufficient for a case to be based on that. Or it's injury, in fact, or it's concrete injury. I'm out of time, but any questions, I'll, thank you. Your Honor, Rebecca Smullins for Plaintiff Appellee John Salcedo. I also have with me here co-counsel Scott Owens and trial counsel Sean Hollis. Your Honors, this is a straightforward application of the Spokio framework, which looks to both history and the judgment of Congress to identify concrete harms. Mr. Salcedo alleges here at least two such harms. The first is the privacy harm, the unconsented auto-dialer text call to his cell phone. And the second is the loss of his time. Here, history and the judgment, as well as this court's precedence, support the concreteness of these multiple harms. Important- Is this not a dementor's injury? Because you're seeking to represent not only Mr. Salcedo, but also a class that would have received one text message, correct? Perhaps I should ask you to define the class that you seek to represent. Your Honor, the class is of individuals who have received similar text messages. One text message, right? The class members may or may not have received more than one text message. The standing inquiry in Spokio confirms this, is really about the name, the class representative. So what we're concerned with here is whether Mr. Salcedo suffered a concrete harm. And this court, as well as the Supreme Court, have repeatedly made clear that what counts for identifying the concreteness of a harm is the quality, not the quantity. So for instance, in Saladin, a case that our brief discusses, talks about, says that there's no minimum quantitative limit. The focus is on the qualitative nature of the injury, regardless of how small. The Supreme Court in Scrapp discussed that the importance is whether it's an identifiable trifle and it's perceptible. So certainly the call here is perceptible. And if, excuse me, the text call here. And if it were 10 text messages or 100 text messages that were injurious, then one text message is also injurious. In this regard- Is that true? I mean, let's, and we're, the other side, and I understand why they don't wanna draw a line, but comparing 100 unsolicited text messages versus one unsolicited text message, I mean, we're all cell phone consumers, that there is a difference in that. How is one not a de minimis harm? How do you link one with 100? It is true that under the common tort law, as defense counsel was referencing, to have a tort violation, it may be that more calls are needed. But the inquiry about the concreteness of the harm is not about the number of calls, it's about the type of harm. Congress here made an objective judgment, which is consistent with the objective standard in tort law, that any unconsented auto dialer text, or excuse me, call to a cell phone- Wait a minute, Congress didn't make any determination about text messages. I understand, and if I may finish on the de minimis point, but I'll come back to that, but Congress determined that any unconsented auto dialer call to a cell phone would be a concrete harm. In that regard, this case is similar to Saladin. Saladin was an establishment clause case that involved plaintiff's offense at a smudge on a stationary. There was a seal that was printed on stationary, I believe it was city government stationary, that was too small to read. It had the word Christianity, but the way it was printed on stationary was not something that could be made out. And in that case, there was an argument that that offense was not as great as the offense felt in other establishment clause cases. And that's where, again, this court said there's no minimum quantitative limit. The focus is on the qualitative nature, and this court reached a similar opinion in the ACLU of Rabin County case. In fact, Spokio discusses that concrete harms can be both those that are measurable and those that aren't. And if you had an exception based on number, it'd be hard to ever have any immeasurable concrete harms. And so certainly, just finally on this point, say that one text message. And this case is actually a three-part text message, as you can see from the complaint. It's certainly comparable to the one minute of fax transmission time that was the concrete harm in Palm Beach. And so to the question about text messages, what Congress's judgment in the TCPA was that a call is a concrete harm. And it's appropriate for this court to apply Congress's judgment in this case because a text call is simply a modern day type of call. In that regard, this case is no different from Perry, which is where this court looked at the Video Privacy Protection Act and the 1980 statute passed in the wake of the Bork hearings about disclosure of video store rental records. And this court concluded that a violation of the Video Privacy Protection Act was a concrete harm when it was applied to a very modern day technology, a mobile app that certainly didn't exist at the time. While technology has changed, the harm is the same. There's still an invasion of privacy and a text call is certainly like a voice call, a communication between two phones. So the FCC, as my colleague mentioned, which is tasked with implementing the statute, did reach that interpretation of the statute that a voice call and a text call are both within its bounds. And that judgment is certainly reasonable. And I would just add on that point that in Campbell Ewald, Justice Roberts' dissent, which noted that all the justices in that case agreed that at the time the plaintiff filed suit, he had standing. That was a case involving a violation of the same provision of the TCPA here, and also the violation was based on text messages rather than phone calls. So when we look at this- Back to what you're saying. So we do have Congress commenting on a cell phone call, but Congress hasn't said anything about regulating text messages. So aren't you necessarily, the FCC has stepped in, but aren't you necessarily asking us to apply a new kind of Chevron deference in effect? No, Your Honor. Congress's judgment was about a call. This is a modern day type of call, just like using my Apple iPhone today over the wireless systems that are available today is a change in technology, but it's still a call. Even though my Apple iPhone and the types of systems for transmitting cellular calls today didn't exist at the time the TCPA was passed. And again, the court made that extension in Perry. And it's also appropriate because the harm here, the privacy harm, is the same. This privacy harm is supported both by history and the judgment of Congress. My colleague repeatedly stated that this wouldn't be enough to be a common law harm because it wouldn't be highly offensive to the reasonable person. That's not the test that Spokio sets out. What Spokio instructs the court is to look at both the judgment of Congress in history as very strong indicators of whether a harm is concrete. And on the history front, to look at whether there's a close relationship to the common law harm. And here there is that close relationship. Under common law, phone calls are recognized in the restatement as a way that someone's privacy can be invaded as an intrusion upon seclusion. In a variety of other contexts, the Supreme Court has recognized that intruding on someone's right to be left alone through unwanted communications is a protectable interest. Based on that argument, you would have to concede that if a person had their cell phone set up for these messages to go to a trash folder, or if you blocked those calls, then it would not be an injury, correct? Not be a concrete injury. If the person literally never knew that the communication came in, which is not the case here, I would agree that that's not a privacy harm. There might be other harms, depending on how the cell phone is affected. And there might be a risk of harm, which is another topic that Spokio addresses. But we agree that the privacy harm here, the actual privacy harm is about the communication. And here it's clear from the complaint that Mr. Salcedo received the text messages. And so the history here strongly supports the conclusion that this harm, and again, the nature of this harm is concrete. And that's the question before this court, not whether or not it would rise to the level of a tort harm. This historical reference point is fully consistent with and supported by Congress's judgment here. This is an example of Congress, as Spokio says, elevating a concrete injury to the status of a legally cognizable one. The statute itself references the privacy purpose in B2C. The detailed statutory findings that were in the session law repeatedly reference privacy as the overriding goal. And importantly, in number 13 of those findings, makes clear that Congress's concern is not attached to a particular type of call or a particular type of sender. And so the argument that somehow this is exempt because it's from a former lawyer just doesn't comport with Congress's judgment. And there is no exception in the TCPA for calls from someone with whom there was a prior relationship. Congress's judgment was objective and it was supported by facts in the record. The Supreme Court recognized in MIMS that it was based on voluminous consumer complaints about abuses of telephone technology. And the Senate and House reports again make clear that privacy, although not the only concern, we have the separate facts concern, but was a cross-cutting one that applied to all provisions of the TCPA. It was, as Judge Pryor was asking about earlier, a substantive right not to receive these calls. The technical and procedural provisions are in a different portion of the statute. And it was backed up with a private right of action and statutory damages. So in other words, what we see here is that Congress, as one district court said in May versus Scott Warranty, liberalized and codified the application of a common law tort to a particularly intrusive type of unwanted call. So his- So your argument is merely the receipt of the text message is the concrete harm. It doesn't have to tie up the phone. It doesn't have to inconvenience the individual. It's simply receipt. That's the invasion of privacy? That is the privacy harm, in which is a separate question from whether it would have been an invasion of privacy under common law. Separately and apart from that, Mr. Salcedo has alleged other concrete harms. The waste of his time, as well as the unavailability of his cell phone. And on the waste of his time, this loss of time that is involved in seeing what's on your phone and addressing a text message is concrete under this court's recent decision in Pedro versus Equifax. In that case, which involved a problem with a credit report that required the plaintiff to solve the problem, this court looked at the waste of time and decided that was a concrete injury. Importantly, by referencing Palm Beach Golf, which is this court's TCPA case about tying up a fax machine. It certainly makes sense that if taking away a fax machine's time is concrete injury, then taking away a person's time is concrete injury. And again, this is a perceptible harm. You can certainly see the difference between tying up a fax machine and having to do the work necessary to clear up a credit report and dealing the less than a minute that it would take to deal with unsolicited text. I don't know the distinction between a one minute transmission time on a fax machine and a waste of Mr. Salcedo's time. It's a question of time in both cases. Mr. Salcedo does not allege here that his line was tied up in the same way that the fax machine line was tied up. But he does allege that his time was wasted.  What did he do in response to the text? The waste of his time in addressing it. What was that exactly? I understand. So the complaint states that it wasted his time answering or otherwise addressing it. That's an allegation intended to include reading it or otherwise addressing it. If we need to develop those facts further in this case, we will. We look to the complaint for what that is. We don't have any other record evidence on that. No. That's correct. This is a facial challenge. And the allegations in the complaint that he wasted time answering or otherwise addressing it is certainly sufficient to meet the pleading standard, which is all that is required at this stage to give notice of what was involved. I want to address a couple of other points. The policy concerns about the number of TCPA judgments or relevant here, as this Supreme Court cautioned in Lexmark, that it's not the role of the court to apply an independent policy judgment to limit a cause of action just for prudential reasons. So, again, the focus here is whether or not there's a concrete injury, not the number of lawsuits that may exist in the world. Also, on Palm Beach Golf, there's nothing that suggests that that is the only concrete injury. So, in conclusion, I will just emphasize that Mr. Salcedo here has two, at least two, independently concrete injuries that are supported by history judgment of Congress and this court's precedence most recently in Perry and Pedro, and for those reasons, we request that the court affirm the Mr. Ovalman, you have three minutes remaining. Thank you, Your Honor. First, what I've argued is that Congress made no judgment to elevate texts because they didn't consider texts. And second, I argue if you look at the common law, this would not be an invasion of privacy under the common law. I didn't hear really any meaningful response to either point. What do you say in response to her point that that's exactly what happened in Perry, that it was extended to a slightly different technology, the intent of Congress in enacting the, I think it was the VPPA? Well, in Perry, first of all, it's an information, a control of information case, which have always been treated differently when I'm either trying to get information from the government or control information about myself. Second, there was an allegation. Is there a case where the Supreme Court has carved out information in the way that you're talking about? It's really the lower courts, I think, honestly, that have done that. But in any event, in Perry, what happened was the allegation was that the person's personal information about, this is known as the Bork statute, by the way, the information about the videos were gathered and then disclosed to a third party. Now, in the end, the court, when it looked at the merits of the second half of the opinion, said it wasn't really, that's not really what happened. But it said the allegation of the disclosure is sufficient because that's the harm that informational statutes are directed at. Now, with respect, I told the court that I didn't think the procedural substantive thing was as important as it might seem from a question, and that's because if you look at Spokio, it says this case primarily concerns injury in fact, the first and foremost of standing's three elements, and it goes on to say, to establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or eminent, not conjectural or hypothetical. In any standing case, that has to be done. Then there was something made of what the act was about, and the act was about preventing phone calls, this part of the act. The facts, there's a separate part of the act on faxes, and that's why it makes so much sense to say tying up the fax machine is a concrete injury because you're actually tying up somebody's fax machine that can't get work done, and you're also shifting the cost. But there's a separate section of the law, but on the part we're talking about, it was directed at phone calls to residences, and there's just a ton of stuff in the findings, and Senator Hollis was a sponsor, and others, that make it clear that what they were worried about was phone calls at dinnertime, at night, 230 calls in six months, 294 in another, that interrupt you at home, and texting is totally different. I know your time is up, but I do have a question about that that goes to this quantitative versus qualitative difference. You didn't want to draw a line earlier, but if we have, I'll go back to my first question, if we have 12 text messages, you would agree that we would be closer to having a concrete difference? Oh, sure, but I don't run away from the qualitative point. My argument is one, doesn't produce the qualitative harm that this was designed to prevent. This isn't, and we're all people here, you're all people, would you be highly offended by receiving a text from your former lawyer saying, hey, if you get a ticket again . . . All right, well, let me finish my hypothetical. Yes, of course. Twelve text messages you would agree would be concrete injury. It could be concrete. It could be. But let's assume that those 12 text messages were from 12 employees of the same law firm sending the same facts. You would be able to argue you didn't have standing with regard to any of those for the arguments that you've made, but you've acknowledged that there may be actual injury. I think that . . . It would meet the definition that you've offered. I think under the law that if there are 12 people from the same firm, they all count. Who would be the defendant in that case? It would be the law firm, which is right the way it is here. Mr. Hann and his law firm are the defendants. Thank you very much, Your Honors. Thank you, Mr. Ovalman. The court will be in recess until 9 a.m. tomorrow morning.